IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Cr. No. 19-10 Erie |
| | ) |
| JARED DEVIN GOMES, | ) |
| | ) |

**Opinion and Order on Motion for a <u>Franks</u> Hearing**

Presently before the Court is Defendant Jared Devin Gomes's Motion for a <u>Franks</u> Hearing, in which Mr. Gomes argues that the five affidavits of probable cause supporting five warrants in this case contain material misrepresentations and reckless misstatements or omissions of fact, rendering the Warrants invalid under <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978).  ECF No. 270.  The Government has filed a Response (ECF No. 282), and argument on the Motion was held in Erie, Pennsylvania on February 11, 2022.  ECF No. 367.  After careful review of the briefs, the challenged Affidavits and Warrants, and the arguments of counsel, the Motion will be denied.

**I.  Background**

Mr. Gomes is charged in a five-count Superseding Indictment with Conspiracy to Possess with Intent to Distribute and Distribution of 400 grams or more of Fentanyl and 500 grams or more of Cocaine, from January 2018 to February 2019; Possession with Intent to Distribute 500 grams or more of Cocaine and 40 grams or more of Fentanyl on February 21, 2018; and three counts of Possession with Intent to Distribute 40 grams or more of Fentanyl.  ECF No. 63.

The investigation was conducted by the Federal Bureau of Investigation's Erie Area Gang Law Enforcement Task Force (EAGLE Task Force).  Prior to filing charges in this case, the EAGLE Task Force engaged in an investigation utilizing, among other things, video

surveillance, human surveillance, mobile tracking devices, and a prospective GPS/E911 cell phone Location Data tracker. The video and human surveillance primarily centered on Mr. Gomes and his suspected associates, but also involved multiple other actors, multiple vehicles, and multiple locations. FBI Special Agent Michael Shaffer was the Coordinator of the EAGLE Task Force during the times relevant to the present Motion. Agent Jeffrey Greene of the Pennsylvania Office of the Attorney General, Bureau of Narcotics and Drug Control, was deputized as a Special Federal Officer, as a member of the EAGLE Task Force, and was involved in the investigation of Mr. Gomes. As stated, the subject matter of the present motion is five affidavits, authored by Agent Greene or Special Agent Shaffer, written in support of applications for five warrants that were issued from October 6, 2017, to February 14, 2019.

The first three Affidavits, chronologically, sought authorization for mobile tracking devices. The first Warrant, dated October 6, 2017, was supported by an Affidavit sworn by Agent Greene. ECF No. 270-5 (1:17-mj-48). The Affidavit sought authorization to install and monitor a mobile tracking device on a black 2005 Maserati Quattroporte registered to Mr. Gomes. Id. On November 17, 2017, an application, to extend the time for continuing authority to monitor the tracking device on the Maserati, was approved. 1:17-mj-48, ECF No 6. The second Warrant, dated January 9, 2018, was supported by an Affidavit sworn by Agent Greene. ECF No. 270-6 (1:18-mj-1 & 1:18-mj-2). The Affidavit sought authorization to install and monitor a mobile tracking device on a gray 2007 Chevrolet Suburban, registered to Tommy Clanton and used by Mr. Gomes, and on a red 2014 Subaru Outback, registered to Diamond Haughton and used by Mr. Gomes. Id. The third Warrant, dated February 22, 2018, was supported by an Affidavit sworn by Agent Greene. ECF No. 270-4 (1:18-mj-9). This Affidavit

sought authorization to install and monitor a mobile tracking device on a black 2012 Jeep Wrangler registered to Mr. Gomes.

The fourth Warrant, dated March 13, 2018, was supported by an Affidavit sworn by Special Agent Shaffer and sought authorization for disclosure of prospective GPS/E911 Location Data for a cell phone owned by Mr. Gomes. ECF No. 270-3 (1:18-mj-18). The fifth Warrant, dated February 14, 2019, was supported by an Affidavit sworn by Agent Greene, and sought authorization for search warrants to search Lovell Place Apartments, 153 East 13th Street, Apt #315, Erie, Pennsylvania and to search 814 East 23rd Street. Erie, Pennsylvania. ECF No. 270-2 (1:19-mj-21 and 1:19-mj-22).

In the October 6, 2017 Affidavit, Agent Greene, reported on information obtained by Pennsylvania State Police Trooper Jon Matson from May 2017 interviews with Confidential Informant #1 (CI#1) and Confidential Informant #2 (CI#2). The following averments appear in essentially the same form in all four subsequent Affidavits.

> 9. In May 2017, Pennsylvania State Police Trooper Jon Matson interviewed a subject who had been arrested for possession of over an ounce of suspected heroin. The subject hereinafter referred to as CI#l provided information including information against his/her own penal interest. CI#l provided the information hoping to receive some consideration on the charges. Much of the information provided by CI#l has since been confirmed by law enforcement. The information provided by CI#l was believed to be truthful. CI#l was also facing probation/parole violations and later absconded and is no longer in a position to cooperate. The information provided by CI#l included the following information:
>
> 10. The largest drug dealer in Erie Pennsylvania is a black male described as short, short hair, large upper body and skinny legs known to CI#l as Tone. Tone is half black and half Dominican. Tone was later identified as Jerad D. GOMES.
>
> 11. CI#l stated that GOMES is from the Bronx, New York and is on federal parole. GOMES is a member of the Bloods street gang. About ten years ago GOMES was arrested in the Bronx for drug trafficking and gun charges. When GOMES was wanted for the above charges the FBI looked for

him at the MTV music awards and at rappers houses. While in New York GOMES was also known as "JG." GOMES previously lived in Hagerstown, Maryland. While GOMES lived in Hagerstown he was known as "Black". GOMES has no known Facebook or social media presence. GOMES girlfriend is named Shannan Lee. Lee posted a picture of GOMES online but GOMES made her take it down immediately. Trooper Matson was able to obtain a copy of that photo to attempt to identify GOMES.

12. According to CI#l, GOMES hires people to fix up houses for him. GOMES talked to CI#l about building secret stash spots in the houses he owns. GOMES currently lives in the Lovell place apartments behind Tim Horton's in Erie and has a place in Edinboro, Pennsylvania. GOMES bought 814 East 23rd Street in Erie from Dre Knight. GOMES purchased the house for 15 oz of cocaine. GOMES keeps his drug proceeds wherever GOMES stays.

13. CI#l stated GOMES drives several vehicles including a black Mercedes Benz CL550, black Porsche 911, black Tahoe, black Maserati, and a Lexus "truck". All these vehicles have "traps", a hidden compartment in which to conceal contraband commonly used by upper level drug trafficker while transporting drugs.

14. CI #1 indicated that GOMES' drug couriers are Dominican females from New York City. The females transport 3 kilos of cocaine a week from New York City to Erie; The females used to transport the drugs in McDonalds bags.

15. According to CI#l, GOMES' only associates in Erie are three or four males and one or two females. They include Tommy Clanton, Chinnello Blaski and Jerry Ferguson who are supplied drugs by GOMES. A black male known to CI#l as Russell works with Clanton. Russell is possibly a sub dealer for Clanton according to CI#l. One of GOMES' friends is a black female at the public defender office in Erie. GOMES gets information from her about what is happening in Erie.

16. CI#l stated that GOMES buys a lot of guns and has a gun fetish. GOMES stores guns at 429 East 24th Street in Erie, the residence is known as "The Armory". Members of the Erie street gang, known as 4-Nation, store their guns at the residence and buy guns from GOMES. Darnell Lofton stays at the Armory and is tasked with keeping the guns safe and selling the guns. Lofton is a member of 4-Nation. Not many people are permitted to be at the Armory and no parties are to be held there. CI#1 observed multiple guns in an upstairs bedroom at the Armory in May of 2017.

17. In May 2017, Trooper Matson interviewed another individual hereinafter referred to as CI#2. CI#2 was an associate of CI#1 and provided information hoping to help out CI#1.

> 18.   CI#2 confirmed that CI#1 was an associate of GOMES. CI#2 admitted to transporting money and drugs around Erie for GOMES and his associates. CI#2 never knew how much money or what type of drugs and was just told to go to a certain place with the items. CI#2 saw GOMES meet people inside of Tim Horton's. After the meetings, GOMES would meet the person at their car in the parking lot and give them a Tim Horton's bag containing drugs.

October. 6, 2017 Affidavit, ECF No. 270-5.

With regard to references to the Maserati in later affidavits, Agent Greene stated in the January 9, 2018 Chevrolet Suburban and Subaru Outback Affidavit,:

> 8.   . . . GOMES is utilizing a 2005 Maserati . . . . A court authorized tracking device is being utilized on GOMES' 2005 Maserati. Investigators believe that continued monitoring of the tracking device on the Maserati along with a tracking device on the Subaru Outback and Chevrolet Suburban will help investigators better determine COMES' & CLANTON's method of operation. . . . .

January 9, 2018 Affidavit, 1:18-mj-1 & 1:18-mj-2. Further, Agent Greene refers to the Maserati again in paragraphs 66, 67, 68, and 72. In paragraph 86, Agent Greene states that investigators "believe that mobile tracking devices on the red Subaru Outback and gray Chevrolet Suburban in conjunction with the tracking device currently being utilized n GOMES Maserati will aid this investigation." Id. In the February 22, 2018 Jeep Wrangler Affidavit, Agent Greene reports that the batteries on the tracking device for the Maserati have died:

> 8.   . . . A court authorized tracking device was utilized on GOMES' 2005 Maserati. The batteries died on the tracker and it last reported on December 26, 2017. Investigators in the Bronx, New York area were not able to locate the Maserati. Investigators in Erie have regularly checked locations for the Maserati and are confident it had not returned to Erie. . . .

February 22, 2018 Affidavit, 1:18-mj-9.

## II. Applicable Law

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012), citing United States v. Yusuf, 461 F.3d 374, 383–84

5

(3d Cir. 2006). "To obtain a Franks hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." United States v. Desu, 23 F.4th 224, 234 (3d Cir. 2022) (citing Franks, 438 U.S. at 171–72). "The defendant must prove his allegations by a "substantial preliminary showing."" Desu, 23 F.4th at 234 (quoting Franks, 438 U.S. at 171–72). "To carry his burden, [the defendant] cannot 'rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." Desu, 23 F.4th at 234 (quoting Yusuf, 461 F.3d at 383 n.8) (quoting Franks, 438 U.S. at 171). "If a defendant succeeds in obtaining a hearing, he must then prove the allegations by a 'preponderance of the evidence' at the hearing itself in order for a judge to suppress evidence obtained as a result of the warrant." Desu, 23 F.4th at 234 (quoting Franks, 438 U.S. at 156).

The United States Court of Appeals for the Third Circuit "categorize[s] false statements as 'omissions' or 'assertions.'" Desu, 23 F.4th at 234 (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000). "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know.'" Desu. 23 F.4th at 234 (quoting Wilson, 212 F.3d at 783). "'[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.'" Desu, 23 F.4th at 234 (quoting Wilson, 212 F.3d at 783). If a defendant succeeds in establishing that that there were false assertions or reckless omissions of fact, the defendant must then demonstrate that such assertions or omissions were "material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3rd Cir. 1997).

6

Materiality is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789 (citing Sherwood, 113 F.3d at 399).

**III. Discussion**

Mr. Gomes contends that each of the five Affidavits lack probable cause because of the knowing or reckless inclusion of misstatements of fact and the knowing or reckless omission of material facts. Mr. Gomes also argues that an examination of the November 17, 2017 Application for extension demonstrates that the October 6, 2017 Affidavit was "manufactured" and "fabricated." Finally, Mr. Gomes argues that the second and third Affidavits show that misrepresentations and falsehoods occurred.

    **A.**    **Averments Regarding the Confidential Informants**

Mr. Gomes focuses his Franks challenge, primarily, at the averments authored by Agent Greene, wherein he describes information obtained from CI#1 and CI#2. Mr. Gomes argues that if the challenged averments in the October 6, 2017 Affidavit are stricken because of material misrepresentations and omissions, the remaining averments are insufficient to establish probable cause. This is so, Mr. Gomes argues, because the foundation for establishing probable cause in the first Affidavit rests on the information obtained from the confidential informants. He also maintains that although the subsequent Affidavits included new averments that might support probable cause, such new information only existed due to the initial unlawful misrepresentations and omissions within the October 6, 2017Affidavit.

Specifically, Mr. Gomes asserts that any reasonable person, trying to establish probable cause to place a mobile tracking device on a car, would know that a judge would want to know when and why a confidential informant had absconded and was no longer in a position to

7

cooperate. Relatedly, Mr. Gomes argues that the affiant, Agent Greene, knew that a judge would want to know when the confidential informant was arrested; the specific information that a confidential informant provided that was against the confidential informant's own interest; the specific information that law enforcement was able to confirm; and whether the confidential informant was considered credible and reliable.

### 1. Information as to CI#1 Absconding

With respect to information about when and why CI#1 absconded, to the extent that such information is missing, it is not the of type a judge would want to know in the circumstances of the Affidavits at issue. Agent Greene stated in his October 6, 2017 Affidavit that CI#1 had been arrested for possession of suspected heroin, was facing probation/parole violations, and had absconded. Given that CI#1 was interviewed in May 2017, a judge would know from Agent Greene's Affidavit that CI#1 absconded sometime after May 2017 but before October 2017. A judge could further consider that the most likely explanation for CI#1 absconding was to avoid facing the new drug possession charge and the consequences of his probation/parole violation. A judge would also know that the likely reason why CI#1 was no longer in a position to cooperate was because CI#1 had absconded. It is possible there are other reasons why CI#1 absconded and was no longer in a position to cooperate, but Mr. Gomes does not suggest any other such reasons. Desu, 23 F.4th at 234 (defendant cannot rest on mere conclusory allegations).

### 2. When was CI#1 Arrested

As to *when* the confidential informant was arrested, Agent Greene stated that the interview occurred after CI#1 had been arrested. The interview occurred in May 2017. This is sufficient for a judge to know that the arrest occurred at some time prior to the May 2017 interview. Furthermore, the commonsense understating of the averment that Trooper Matson

"interviewed a subject who had been arrested," is that a short time frame occurred between the arrest and the interview. Again, Mr. Gomes does not present an alternative date of arrest, beyond his conclusory statement that the arrest date is not stated, to support that such information would constitute a material omission.

### 3. Information Provided Against CI#1's Penal Interest

A judge would want to know, in general, what information a confidential informant is providing that is against the informant's penal interest in order to evaluate the trustworthiness of the information being provided. Here, CI#1 potentially implicates himself as a person with ties to drug trafficking by providing extensive information about a suspected interstate drug dealer, his associates, and some of the drug dealer's methods of operation. A judge reviewing the Affidavit would be able to view such information as against CI#1's own penal interest in two ways. First, CI#1 is providing information about his knowledge of a wide-spread drug trafficking scheme, to which CI#1 appears to be involved. In addition, the information CI#1 provided may be information against his own penal interest in relation to CI#1's arrest for possession of heroin and CI#1's potential probation/parole violations. Mr. Gomes does not proffer what *specific* information is missing from the Affidavit that would change the probable cause determination. A judge reviewing the Affidavit has sufficient information to evaluate CI#1's trustworthiness with respect to information provided as being against CI#1's penal interest. Mr. Gomes's has not made a "substantial preliminary showing" that Agent Greene recklessly omitted information that CI#1 provided that was against CI#1's own penal intertest.

### 4. CI#1's Information Confirmed by Law Enforcement

Next, a reasonable person preparing an affidavit would know that a judge would want to know specific information that law enforcement was able to confirm from a confidential

informant. However, contrary to Mr. Gomes's argument, Agent Greene did provide such information. Agent Greene stated that "[m]uch of the information provided by CI#1 has since been confirmed by law enforcement." ECF No. 270-5, ¶ 9. Confirmation of CI#1's information appears throughout the Affidavit.

CI#1 told Trooper Matson that Mr. Gomes was from Bronx, New York, that he had been arrested and convicted in New York for drug trafficking and firearm charges, that his girlfriend's name was Shannon Lee, and that he drove a black Maserati. Trooper Matson confirmed that a black Maserati with a New York license plate, driving in Erie, Pennsylvania on June 8, 2017, was driven by a man matching CI#1's description of Mr. Gomes. ECF 270-5, ¶ 19. The Maserati drove to the 600 block of West 8th Street in Erie. Id  Law enforcement confirmed that the address of Mr. Gomes's alleged girlfriend, Shannon Lee, was 621 West 8th Street in Erie, which was across the street from where the Maserati was parked on June 8, 2017. Id. ¶ 20. On October 4, 2017, Pennsylvania State Troopers conducted a traffic stop of a black Maserati, driven by Mr. Gomes, at which time Mr. Gomes informed the troopers of his criminal background. Id.  Law enforcement also obtained information from news clippings, press releases, Google searches, a press release issued by the United States Attorney for the Southern District of New York, docket entries from the Southern District of New York, and a Western District of Pennsylvania United States Probation Officer's confirmation that Mr. Gomes had been indicted and convicted in the Southern District of New York on drug and firearms charges. Id. ¶¶ 22-25.

CI#1 also stated that Shannon Lee had posted a picture of Mr. Gomes online, which Mr. Gomes told her to take down. Id. ¶ 11. Trooper Matson was able to obtain a copy of the photograph that allegedly depicted Mr. Gomes. Id.  On June 9, 2017, a United States Probation

10

Officer in the Western District of Pennsylvania provided Trooper Matson with a photograph of Mr. Gomes taken from Mr. Gomes's New York federal conviction record. Id. ¶ 22. The photograph matched the description of Mr. Gomes as given by both CI#1 and CI#2. Id. .

CI#1 also told Trooper Matson that Mr. Gomes purchased a residence located at 814 East 23rd Street, Erie, Pennsylvania from Dre Knight for 15 ounces of cocaine. Id. ¶ 12. Agent Greene checked Erie County Property records and learned that Andre Knight sold 814 East 23rd Street on January 13, 2017, for $7,500 to an entity called Jared & Shannon Real Estate, LLC. Id. ¶ 21. On August 23, 2017, Agent Greene learned that on June 13, 2016, a Certificate of Organization for Jared & Shannon Real Estate, LLC was filed with the Pennsylvania Department of State, Bureau of Corporations, listing Jared Gomes of Bronx, New York as the organizer. Id. ¶ 30. The sale of Andre Knight's residence to Jared Gomes was further confirmed in June 2017 by a citizen who had admitted to being involved in drug use in the past, and then by Andre Knight himself who admitted that he sold his residence to "'J' and some girl" for $7,500. Id. ¶¶ 29, 31.

A review of the Affidavit demonstrates that Agent Greene in fact provided information to show that law enforcement had confirmed "much" of the information provided by CI#1. Therefore, there is no omission of fact with regards to law enforcement's corroboration of CI#1's information.

Mr. Gomes also argues that Agent Greene omitted stating that CI#1 was credible or reliable. Whether an affiant believed that a confidential informant was credible or reliable is the kind of information a judge would want to know. Here, Agent Greene did not use the words "credible" or "reliable," but his averments, showing the extent of law enforcement's corroboration of CI#1's information, established CI#1 as credible and reliable. To the extent that

11

Agent Greene did not specifically state that CI#1 was credible or reliable, such omission is not material. A judge, reviewing the affidavit in a commonsense manner and considering all of the information and circumstances presented, would be able to conclude that CI#1 was credible and reliable.

### 5. Confidential Informant No. 2

Based on the above conclusions as to CI#1, no additional information was necessary to support a finding of probable cause. Thus, any alleged omissions as to CI#2 would not be material, since probable cause was justified even in the absence of any information from CI#2. The lack of necessity for CI#2's information notwithstanding, supports that there are no material omissions. There are only two significant statements concerning information from CI#2. Those were:

> 17. In May 2017, Trooper Matson interviewed another individual hereinafter referred to as CI#2. CI#2 was an associate of CI#1 and provided information hoping to help out CI#1.
>
> 18. CI#2 confirmed that CI#1 was an associate of GOMES. CI#2 admitted to transporting money and drugs around Erie for GOMES and his associates. CI#2 never knew how much money or what type of drugs and was just told to go to a certain place with the items. CI#2 saw GOMES meet people inside of Tim Horton's. After the meetings, GOMES would meet the person at their car in the parking lot and give them a Tim Horton's bag containing drugs.

ECF No. 270-5. Mr. Gomes argues that Agent Greene omitted the details of the relationship between CI#1 and CI#2; the time frame when CI#2 sold drugs for Mr. Gomes, and the type and quantity of drugs CI#2 sold for Mr. Gomes. Mr. Gomes also argues that Agent Greene omitted any statement concerning the time frame for when CI#2's drug activities occurred or for when CI#2 observed the events at Tim Hortons.

Agent Greene stated that the two informants were associated with each other, and that they were both associates of Mr. Gomes. Agent Greene also stated that CI#2's reason for

12

providing information was to help CI#1.  From this information, a judge could determine that the two informants were involved in illegal drug trafficking and that they had a close enough relationship that CI#2 was willing to speak with law enforcement to assist CI#1.  As to the type and quantity of drugs, paragraph 18 specifically states that CI#2 did not know how much money or the type of drugs he was carrying for Mr. Gomes.

The time frame for when CI#2's drug activities involving Mr. Gomes occurred and for when CI#2 observed Mr. Gomes's activities at Tim Hortons is information that a judge evaluating an affidavit would want to know, because such information could affect the probable cause determination.  Inserting said time frames, if known, and if such timeframe was stale, this information might slightly undermine the impression that illegal drug activity was presently occurring; however, such would not eliminate probable cause.  The averments as to CI#2's information and circumstances supports that CI#2 was reporting on contemporaneous events where CI#2 was attempting to help CI#1.  As discussed above, law enforcement had confirmed much of the information provided by CI#1, which in turn corroborated information provided from CI#2.  CI#2's information was minimal in light of the totality of CI#1's information.  Thus, a judge reviewing the affidavit in a commonsense manner and considering all the circumstances would conclude that probable cause had been established.

      **B.**    **Application for Extension of the Maserati Tracking Device**

Mr. Gomes next argues that the initial October 6, 2017 Affidavit in support of placing a tracking device on the black Maserati was manufactured and fabricated.  The evidence Mr. Gomes proffers to support this argument derives from the November 17, 2017 Application for extension of time to continue tracking the Maserati.[1]  1:17-mj-48, ECF No 6.  Mr. Gomes argues

---

[1] Mr. Gomes points out that, although then-Assistant United States Attorney Marshall Piccinini authored the Application, Assistant United States Attorney Christian Trabold signed the Application.  The Court does not see a

13

that his examination of said Application suggests that the mobile tracking device was originally placed on the black Maserati in February 2016, well before the October 7, 2017 Affidavit. This Court has examined all five Affidavits, including the November 17, 2017 Application for extension, and concludes that there is no evidentiary support for the contention that a mobile tracking device was being used on the Maserati in February 2016 or before the October 2017 authorization. Accordingly, there is no evidence that the October 6, 2017 Affidavit was manufactured or fabricated.

### C. Maserati Tracking Device

Finally, Mr. Gomes argues that misrepresentations and falsehoods occurred, at least in part, based upon the date when the batteries on the Maserati tracking device reportedly stopped working. Mr. Gomes argues that Agent Greene's February 22, 2018 Affidavit states that "the batteries died on the tracker" on the Maserati and that the tracker "last reported December 26, 2017." ECF No. 270-4, ¶ 8. Mr. Gomes asserts that, even though the Maserati tracking device did not report any data after December 26, 2017, the January 2018 Affidavit discusses Maserati activity as though it was occurring beyond December 26, 2017. For example, the January 2018 Affidavit states that a "court authorized tracking device is being utilized on GOMES' 2005 Maserati. Investigators believe that *continued monitoring of the tracking device on the Maserati* along with a tracking device on the Subaru Outback and Chevrolet Suburban will help investigators." ECF No. 270-6, ¶ 8 (emphasis added). The Affidavit later states that the "mobile tracking devices on the red Subaru Outback and gray Chevrolet Suburban *in conjunction with the tracking device currently being utilized n GOMES Maserati* will aid this investigation." ECF No.

---

relationship between which Assistant United States Attorney singed the Application and the veracity of the information provided.

270-6, ¶ 86 (emphasis added). The Maserati is mentioned again in paragraphs 66, 67, 68, and 72, but these averments all concern activity occurring before the batteries on the tracker died.

The references to the Maserati tracking in paragraphs 8 and 86 of the January 9, 2018 Affidavit are general refences only. In contrast, paragraphs 66, 67, 68, and 72 contain specific references to the Maserati's location and activity from early December 2017. A reasonable explanation for the present tense references to the Maserati in the January 9, 2018 Affidavit is simply that Agent Greene had not yet learned that the batteries on the tracking device on the Maserati had died on December 26, 2017, only fourteen days before he submitted the Application. Even without this explanation, there is no indication of any material fabrication, misrepresentation, or omission within the January 9, 2018 Affidavit. Under the circumstances here, the Court concludes that whether or not the batteries on the Maserati had died as of December 26, 2017 is not a fact that a judge would want to know when evaluating whether probable cause existed to authorize the placement of mobile tracking devices on two separate vehicles.

Further, even if "when the batteries died" was the kind of thing a judge would want to know, and whether Agent Greene in fact did know that the batteries had died by December 26, 2017, such omission is not material, as such would not undermine the probable cause established by the Affidavit. To determine materiality, the Affidavit is edited to remove the present tense references in paragraph 8 and 86 and to add that the batteries in the Maserati tracker had died by December 26, 2017. The relevant paragraphs, with the omissions struck out and the additions highlighted in bold, would read as follows:

> 8. We are investigating the drug trafficking activities of several subjects including Jared GOMES, Andre Knight, Tommy CLANTON, and subjects whose identities are unknown to your affiant. It is the belief of your Affiant that, based upon the following information, CLANTON is utilizing a 2007 Chevrolet

Suburban automobile, and GOMES is utilizing a 2005 Maserati automobile bearing New York registration HGR-1462 and a 2014 Subaru Outback to possess, distribute or transport proceeds from the sales of controlled substances or otherwise further their drug trafficking enterprise. A court authorized tracking device ~~is being~~ **had been** utilized on GOMES' 2005 Maserati **until the batteries on the tracking device died on December 26, 2017.** Investigators believe that ~~continued monitoring of the tracking device on the Maserati along with~~ a tracking device on the Subaru Outback and Chevrolet Suburban will help investigators better determine COMES' & CLANTON's method of operation. . . . .

. . .

66. On December 1, 2017, at approximately 11:12 a.m. the Maserati made several stops in the Co-Op area of Bronx, New York then headed towards Erie. At 1:49 p.m., the Maserati exited I-80 onto Route 42 near Bloomsburg, PA and appeared to be at a Verizon Store for approximately one half hour. . . . .

67. A review of the video revealed that at 6:51 p.m., GOMES entered apartment #315 with a roller suitcase and backpack, The Maserati upon arrival in Erie parked at the Lovell Place apartment's north lot where it remained for the day. CLANTON visited the apartment that evening. A review of the tracker by Trooper Matson revealed that on Saturday, December 2, 2017, the Maserati made several stops in the Erie area. CLANTON again visited the apartment.

68. A later review of the video reveals that on Sunday, December 3, 2017, at 12:09 a.m., CLANTON exited apartment #315 carrying a plastic bag followed by GOMES. They then walked toward the parking lot where the Maserati was parked. It appeared that CLANTON arrived in the Suburban. At 12:20 a.m., according to a review of the tracker, the Maserati traveled to the area of North Park Row and Peach Streets and parked in the area across from Resolution Nightclub, 28 North Park Row, Erie, PA and several other businesses. When they later returned to Lovell Place, GOMES entered the apartment and CLANTON appeared to depart in the Suburban.
. . .

72. The tracker revealed that the Maserati made several stops in the Erie area that morning[2] after GOMES exited the apartment at 8:10 a.m. Troopers Matson and Bridges were attempting to conduct surveillance of the Maserati and Trooper Bridges located the Maserati parked at Kraus Department Store and then it was gone. At 10:20 a.m. a subject, believed to be GOMES, returned to the apartment. Troopers Bridges and Matson then checked and located the Maserati in the parking lot at Lovell Place and found that the red Subaru Outback was also in the parking lot. At 12:19 p.m. GOMES departed the apartment building with two roller suitcases and a backpack, briefly returned to the apartment, then at 12:28 p.m. again exited the building. At 12:51 p.m. the black female exited #315 and

---

[2] As stated in paragraph 71,"that morning" refers to Monday, December 4, 2017.

departed the building with a large bag or purse.  Between the time that GOMES and the female exited the apartment and the Maserati departed, investigators can only speculate that they were in the Subaru.  A review of the tracker by Trooper Matson revealed that at 2:45 p.m., the Maserati began to travel south onto I-79.  The Maserati eventually returned to Bronx, New York around 2:42 a.m. the following day after a brief stop in Hagerstown, Maryland.

. . .

86.     Your affiant and other investigators involved in this investigation believe that mobile tracking devices on the red Subaru Outback and gray Chevrolet Suburban ~~in conjunction with the tracking device currently being utilized on GOMES Maserati~~ will aid this investigation.  The red Subaru Outback has made regular trips to the Erie area operated by GOMES or a female.  At times both the *Maserati* and Subaru were in the Erie at the same time.  With the current winter weather conditions in the Erie area, GOMES may continue to utilize the Subaru which may be an all wheel drive more suitable for the current weather conditions.

. . .

January 9, 2018 Affidavit, 1:18-mj-1 & 1:18-mj-2 (strikethroughs and bold emphasis added).

The Court finds that the above changes do not affect the probable cause determination.  The Court also has no hesitation in concluding that a reasonable judge, after evaluating the Affidavit with the above additions and deletions, would determine that probable cause had been established.

### IV.  Conclusion

The Court finds that Mr. Gomes has not made a substantial preliminary showing that there are material misrepresentations or omissions of fact to justify a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Accordingly, Mr. Gomes's Motion for a Franks hearing will be denied.

**ORDER**

AND NOW, this 15th day of March 2022 it is hereby ORDERED, ADJUDGED and DECREED that Defendant Jared Devin Gomes's Motion for a Franks Hearing (ECF No. 270), be and hereby is DENIED.

_____
Marilyn J. Horan
United States District Judge